UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.:
AT LAW AND IN ADMIRALTY

ROBIN MOORE,

Plaintiff,

v.

PRINCESS CRUISE LINES, LTD.,

Defendant.

___________________________________/

**COMPLAINT FOR DAMAGES**

The Plaintiff ROBIN MOORE hereby sues Defendant PRINCESS CRUISE LINE, LTD., and files this Complaint for Damages and says:

**THE PARTIES AND JURISDICTION**

1. This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorney's fees.

2. **THE PLAINTIFF.** The Plaintiff ROBIN MOORE ("Plaintiff") is *sui juris* and is a resident and citizen of Mt. Pleasant, South Carolina.

3. **THE DEFENDANT.** Defendant PRINCESS CRUISE LINES, LTD. ("PRINCESS" or "Defendant") is a citizen and resident of Bermuda, is incorporated in Bermuda, maintains headquarters in Santa Clarita, California but does business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade County, Florida. At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4. **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332,

as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is because of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. **VENUE AND PERSONAL JURISDICTION.** The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

b) Had an office or agency in this state and/or county; and/or

c) Engaged in substantial activity within this state; and/or

d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**OTHER ALLEGATIONS COMMON TO ALL COUNTS**

7. **DATE OF THE INCIDENT.** The incident occurred on June 13, 2025.

8. **LOCATION OF THE INCIDENT.** The incident occurred onboard the *Royal Princess* while it was in navigable waters and Plaintiff was a fare-paying passenger. The fall took place on an exterior pedestrian walking/jogging track on Deck 18, on the port side aft of the vessel, immediately adjacent to a golf driving/practice area that was not fully enclosed and allowed golf balls to enter the walking path used by passengers.

9. **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10. **THE DANGEROUS CONDITION.** Defendant Princess Cruise Lines Ltd. is owned and operated by Carnival Corporation & PLC, which also owns Carnival Cruise Line. Princess has operated cruise vessels for decades and maintains a fleet of numerous large passenger ships, including the *Royal Princess*, a Royal-class vessel designed with upper-deck recreational complexes that integrate pedestrian walking tracks with active sports and golf areas. Princess designs, constructs, selects, and approves the layout, equipment, and safety features of these areas and is responsible for the conditions to which passengers are exposed.

11. On the *Royal Princess* Deck 18 contains an exterior walking/jogging track used by passengers for pedestrian exercise. This track runs immediately adjacent to an upper-deck sports and golf practice complex that includes a golf driving/practice station where passengers strike golf balls from a mat toward a netted target area. The configuration intentionally places pedestrian traffic and active recreational use within the same open-deck environment.

12. The golf driving/practice station is not fully enclosed. It consists of a hitting mat, a front-facing net or drape, and partial overhead netting. The area is open along portions of its sides and rear. There is no continuous, sealed containment system preventing golf balls from leaving the hitting area, and there is no barrier separating the golf practice station from the adjacent walking/jogging track.

13. Golf balls are hard, dense, spherical objects designed to travel at speed and to rebound when they strike surfaces. When a golf ball is struck within a partially enclosed driving station, it can contact the netting or drape, deflect, and change direction. Because the area is not fully enclosed, golf balls can escape the intended hitting zone, including by rebounding laterally

or rearward, or by dropping, bouncing, and rolling out of the station. These conditions are further influenced by environmental forces present on an open vessel deck, including wind and the vessel's motion.

14. The design of Deck 18 places the golf driving/practice station directly beside the pedestrian walking track without installing containment features sufficient to prevent golf balls from entering the walking path. As a result, golf balls can and do migrate from the golf practice area into the walking/jogging track where passengers are invited and expected to walk. A golf ball on the walking surface creates a rolling, low-friction hazard that can move unpredictably and interfere with a passenger's footing.

15. Princess's own shipboard design demonstrates that it recognizes the danger of ball-based recreational activities and the need for containment. On the same vessel, other sports courts, including basketball courts, are fully enclosed with netting to prevent balls from escaping their intended areas. Despite having the ability and means to fully contain projectiles in those areas, Princess chose to operate the adjacent golf driving/practice station with only partial containment, immediately next to a pedestrian walking track.

16. The hazard created by this configuration is not isolated or random. It arises from the physical relationship between the partially enclosed golf practice station and the adjacent walking track, and from the predictable behavior of golf balls when struck, rebounding, or rolling on an open, moving deck. By maintaining this layout without adequate containment or separation, Princess created a condition in which golf balls could enter the walking path used by passengers.

17. At all material times, golf balls from the practice area could escape the intended hitting zone, enter the walking/jogging track, and remain there. A golf ball on the walking surface is not stationary or confined. It can move, roll, or shift position without warning. When stepped on, it functions as a pivot point and immediately compromises a pedestrian's footing.

18. The hazard created by a golf ball underfoot on the walking track is not open and obvious to a passenger walking forward along a designated pedestrian path. Passengers are not focused on scanning the walking surface for small rolling objects originating from an adjacent recreational activity. The presence and movement of golf balls on the walkway are intermittent, transient, and unpredictable, and are not readily detectable or avoidable through the ordinary use of the walking track.

19. **DESCRIPTION OF INCIDENT.** The golf driving/practice station is not fully enclosed. It consists of a hitting mat and a target area positioned within the station. The sides and rear of the station are enclosed with netting designed to capture or slow struck golf balls. However, the front, user-facing portion of the station—where the golfer stands and strikes the ball—remains open. There is no continuous, sealed containment system preventing golf balls from exiting the station through this open front area, and there is no barrier separating the golf practice station from the adjacent walking/jogging track.

20. Golf balls are hard, dense, spherical objects designed to travel at speed and to rebound when they strike surfaces. When a golf ball is struck within the driving station, it can contact the netting or other surfaces, deflect, and change direction. Because the front of the station is open, golf balls can escape the intended hitting zone, including by rebounding off the netting and exiting through the open front portion of the station, or by dropping, bouncing, and rolling out onto the adjacent walking track. These movements are further influenced by environmental conditions present on an open-deck vessel, including wind and the motion of the ship.

21. At the time of the incident, Plaintiff was walking forward along the designated pedestrian track. Plaintiff used the track for its intended purpose. While Plaintiff walked forward, a golf ball came from behind Plaintiff and entered the path of travel from the adjacent golf practice

station. Plaintiff did not see any person place the golf ball on the walking surface and did not observe when or how the ball exited the practice area.

22. Princess's configuration allowed golf balls to enter the walking track without warning. Because the golf ball approached from behind and remained in motion, Plaintiff had no opportunity to observe and avoid it. Plaintiff did not see the golf ball at any time before stepping on it.

23. Princess placed the golf practice station directly next to the walking track and allowed golf balls to migrate onto the walking surface. A golf ball was present on the walking track at the time of Plaintiff's fall. The presence of the ball on the walking path resulted from Princess's configuration of the area and its failure to contain golf balls within the practice station.

24. Plaintiff reasonably relied on Princess to configure and maintain the walking track in a condition safe for pedestrian use. Princess designated this path for passenger walking and exercise. Plaintiff walked forward along the marked path and did not look behind for moving objects entering the track from an adjacent recreational activity that Princess had placed next to the walkway.

25. As Plaintiff stepped forward, the golf ball rolled under Plaintiff's foot. The golf ball functioned as a pivot point and immediately caused Plaintiff to lose traction and balance. This caused Plaintiff to suddenly slip and fall.

26. The condition that caused Plaintiff's fall was not open and obvious. Princess allowed the golf ball to move freely onto the walking track from behind Plaintiff. The golf ball was not fixed in place and did not remain in a detectable position. A passenger walking forward on a designated track could not see or anticipate a moving object entering the walking path from behind.

27. Only after the fall did the presence of the golf ball on the walking track become apparent. Princess created a transient and mobile hazard by placing a partially enclosed golf practice station next to a pedestrian walkway and by failing to contain the golf balls within that station.

28. **DAMAGES**: As a result of PRINCESS's negligence, the Plaintiff suffered a fracture of the distal fibula (left ankle). Immediately following the incident, Plaintiff reported the fall to PRINCESS and sought medical care and treatment. PRINCESS directed Plaintiff to its onboard medical facility, where Plaintiff was evaluated and treated. Following the incident, Plaintiff required ongoing orthopedic care and treatment. Plaintiff was placed in a walking boot, transitioned to a brace, and underwent months of physical therapy to address pain, instability, loss of range of motion, and functional limitations. Despite treatment, Plaintiff continues to experience pain, stiffness, and limitations in mobility and daily activities. The Plaintiff continues to experience pain and limitations in her ankle. These injuries are permanent and significantly affect the life and abilities of the Plaintiff. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future. These injuries and damages include but are not limited to economic damage including medical, psychological, and related expenses in the past and in the future; household and related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future.

29. **NOTICE: PARTICIPATION IN DESIGN, SELECTION OF MATERIALS AND/OR CONSTRUCTION.** The *Royal Princess* is part of Princess's "Royal Class" of cruise ships, which includes the *Royal Princess*, *Regal Princess*, *Majestic Princess*, *Sky Princess*, *Enchanted Princess*, and *Discovery Princess*. These vessels were constructed on a common design platform and share core architectural layouts and deck configurations approved by Princess through its New Build and/or Refurbishment Departments. The *Royal Princess* was constructed at the Fincantieri shipyard

under the ongoing supervision of Princess's shoreside personnel, including construction managers, designers, architects, and engineers. Throughout construction, Princess had continuous access to the vessel and maintained the authority to inspect, approve, reject, or require modification of any aspect of the ship's design and construction. Under its contractual relationships with the shipyard, Princess retained ultimate control over the design and construction of its vessels. Princess could reject unsafe or unreasonable design features, require modifications, and withhold payment if construction or design work did not conform to its specifications or requirements. No design or configuration was finalized without Princess's approval.

30. Princess designed, selected, and approved the layout of Deck 18, including the placement of the exterior walking/jogging track and the adjacent sports and golf practice areas. Princess determined the proximity of these areas and approved the configuration that placed a golf driving/practice station immediately next to a pedestrian walkway used by passengers. Princess also selected and approved the containment features for recreational activities on its vessels. On the *Royal Princess*, Princess approved full netted enclosures for certain sports courts, including basketball courts, to prevent balls from leaving those areas. In contrast, Princess approved only partial netting and containment for the golf driving/practice station located adjacent to the walking track. By selecting full containment for certain recreational areas and partial containment for the adjacent golf practice station, Princess recognized that projectiles from ball-based activities present a hazard requiring containment. Princess had the ability, means, and authority to require full enclosure of the golf practice station but chose not to do so. Princess approved and maintained a configuration in which a partially enclosed golf driving/practice station was placed immediately next to a pedestrian walkway without any barrier or separation sufficient to prevent golf balls from leaving the practice area and entering the walking track. All design, configuration, and containment decisions for the *Royal Princess*, including the layout and condition of Deck 18 and the adjacent recreational areas,

were approved by Princess before the vessel entered navigable waters. Princess exercised control over and approved the design, construction, and configuration of these areas, including the conditions that allowed golf balls to escape onto the walking path.

31. **NOTICE – OPTION TO FULLY CONTAIN GOLF PRACTICE AREA**. PRINCESS knew that golf balls used in its onboard driving/practice stations are hard, spherical objects that can rebound, deflect, and travel outside the intended hitting area if not fully contained. PRINCESS has a long-standing practice of designing and configuring recreational areas on its vessels, including selecting and approving containment systems for ball-based activities. Based on this experience, PRINCESS knew or should have known that golf practice areas can be fully enclosed with netting on all sides to prevent balls from escaping the designated area.

32. PRINCESS further knew or should have known that it had the ability, through its design specifications and construction authority, to require full enclosure of the golf driving/practice station, including netting on all sides sufficient to prevent golf balls from leaving the hitting area. PRINCESS also knew or should have known that such containment systems were available, feasible, and in use on its own vessels in comparable recreational areas.

33. Despite this knowledge, PRINCESS chose to design, approve, and maintain the golf driving/practice station on Deck 18 with only partial netting and without full enclosure. By doing so, PRINCESS failed to implement readily available containment measures that would have prevented golf balls from escaping the practice area and entering the adjacent walking track.

34. **NOTICE: PRIOR SIMILAR INCIDENTS.** PRINCESS knew that golf balls used in their onboard driving/practice stations are hard, spherical objects that can rebound, deflect, and travel outside the intended hitting area if not fully contained. PRINCESS designs and configures recreational areas across its fleet and selects and approves containment systems for ball-based activities. Based on its experience, PRINCESS knew or should have known that golf

practice areas can be fully enclosed with netting on all sides to prevent balls from escaping the designated area.

35. PRINCESS further demonstrated this knowledge on the *Royal Princess* itself. PRINCESS installed fully enclosed and netted sports courts, including basketball courts, designed to prevent balls from leaving those areas. By doing so, PRINCESS recognized the risk that balls used in recreational activities can escape and enter adjacent spaces if not fully contained.

36. Despite this knowledge and its demonstrated ability to fully enclose such areas, PRINCESS chose to design, approve, and maintain the golf driving/practice station on Deck 18 with only partial netting and without full enclosure. PRINCESS did not install netting on all sides and did not provide a barrier sufficient to prevent golf balls from escaping the practice area and entering the adjacent walking track used by passengers.

37. By selecting partial containment for the golf practice area while employing full containment for similar ball-based activities, PRINCESS failed to implement readily available and feasible safety measures that would have prevented golf balls from entering the walking path.

38. **NOTICE: THE LENGTH OF TIME AND SIZE OF THE DANGEROUS CONDITION.** PRINCESS knew or should have known of the dangerous condition because of the length of time that condition existed. The hazardous condition was not temporary or newly created. PRINCESS designed, approved, and maintained the configuration of Deck 18 in which a partially enclosed golf driving/practice station was placed immediately adjacent to a pedestrian walking track without full containment. This condition existed from the time PRINCESS approved and installed the design of the golf practice area and placed it into service. From that point forward, PRINCESS created and maintained a configuration that allowed golf balls to escape the practice station and enter the walking path used by passengers.

39. Unlike transient conditions, the hazard here did not arise over minutes or hours. It was inherent in the design and placement of the golf practice station and persisted continuously while the area was in use. PRINCESS knew or should have known that, over time, golf balls would leave the partially enclosed practice station, including by deflection, rebound, or rolling, and enter the adjacent walking track. Because this condition was created by PRINCESS's design and maintained without modification, PRINCESS had ample time to recognize the hazard and implement measures to prevent golf balls from entering the walking path, including full enclosure or separation of the practice area. PRINCESS failed to do so.

40. **NOTICE- CREW MEMBERS IN THE VICINITY.** PRINCESS knew or should have known of the dangerous condition because crew members were assigned to and present in the vicinity of the subject area. PRINCESS staffs and assigns crew to maintain and oversee passenger areas, including exterior decks, walking tracks, and recreational facilities such as sports and golf practice areas. The area at issue was an active passenger space that included both a designated walking/jogging track and a golf driving/practice station. PRINCESS assigned crew to staff, monitor, and maintain these areas, including overseeing guest use of recreational equipment and maintaining the safety of adjacent passenger walkways.

41. Because PRINCESS placed the golf practice station immediately adjacent to the walking track, crew members responsible for that area could see that golf balls could leave the partially enclosed station and enter the pedestrian path. Crew assigned to the sports deck and adjacent areas were responsible for identifying and addressing conditions that posed a risk to passengers in these shared spaces. The presence of crew assigned to the sports deck and surrounding passenger areas provided PRINCESS with the opportunity to observe the condition that allowed golf balls to escape the practice area and enter the walking track. Despite this, PRINCESS failed to correct or eliminate the condition.

42. **NOTICE: CAUTION SIGNS.** PRINCESS knew or should have known of the dangerous condition based on its longstanding practice of using caution signs throughout its vessels. PRINCESS regularly places warning signs in passenger areas, including exterior decks and recreational spaces, because it recognizes that certain conditions present risks that are not readily apparent to passengers and require notice. Through its use of such warnings, PRINCESS has acknowledged that hazards in passenger walkways may not be obvious and that passengers rely on visual cues to identify and avoid those risks.

43. The condition at issue—golf balls entering a pedestrian walking track from an adjacent recreational area—presents the same type of non-obvious hazard for which PRINCESS uses warnings elsewhere on its vessels. Through its experience and use of caution signage, PRINCESS knew or should have known that a condition involving moving objects entering a walking path would require warnings to alert passengers using that path.

44. **NOTICE: TRAINING AND PROCEDURES.** PRINCESS knew for years that passenger areas on its vessels, including exterior decks and recreational spaces, require active monitoring, inspection, and hazard control, as reflected in its safety procedures, training programs, and operational protocols. Cruise lines operate under formal safety management systems that assign crew specific responsibilities for maintaining safe conditions, identifying hazards, and taking corrective action to protect passengers. PRINCESS trained and required its crew to monitor passenger areas under their responsibility, identify unsafe conditions, and take steps to eliminate or control those hazards. This includes overseeing recreational areas, ensuring that equipment and conditions do not create risks to adjacent passenger walkways, and taking action where hazards are present. Because PRINCESS placed a partially enclosed golf practice station directly adjacent to a pedestrian walking track, its crew knew or should have known that golf balls could leave the practice area and enter the walking path. Through its training, procedures, and assigned safety

responsibilities, PRINCESS had actual and/or constructive knowledge of the hazard created by this configuration and the need to correct or control that condition. PRINCESS failed to do so.

45. **NOTICE: VIOLATION OF INDUSTRY STANDARDS.** PRINCESS, at all relevant times, was aware of mandatory international vessel safety regulations promulgated by the International Maritime Organization (IMO) under the Safety of Life at Sea (SOLAS) treaty, including Part C, Regulation 13, subpart 1.1 ("safe escape routes shall be provided") and subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles."). The exterior walking/jogging track on Deck 18 of the *Royal Princess*, where Plaintiff fell, constitutes an escape route that PRINCESS was required to provide and maintain in a safe condition. These standards require passenger walkways to remain clear of hazards and free of conditions that interfere with safe passage. Through its knowledge of these standards, PRINCESS knew or should have known that allowing objects, including golf balls, to enter and remain on a designated walking path would create a hazard to passengers using that route.

46. PRINCESS, at all relevant times, was also aware of applicable industry standards, including ASTM, ANSI, the ISM Code, and related regulations governing safe passageways and walking surfaces. See, e.g., IMO MSC Circular 735 (June 24, 1996); U.S. Access Board Passenger Vessel Accessibility Guidelines; ADA Accessibility Guidelines; 46 CFR §§ 72.05-20(n), 116.438(h); ASTM F-1166-07; and the Life Safety Code. These standards collectively address the design, maintenance, and use of passenger walkways and require that such areas be maintained in a condition that allows for safe and unobstructed travel. Through its familiarity with and use of these standards, PRINCESS knew or should have known that configuring a partially enclosed golf practice area adjacent to a pedestrian walkway, without preventing objects from entering the path, created a foreseeable hazard to passengers.

**COUNT I**
**NEGLIGENT FAILURE TO MAINTAIN**
**(Direct Liability for Negligence Under General Maritime Law)**

47. The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 46 above.

48. This is an action against PRINCESS for its negligent failure to maintain the pedestrian walking/jogging track on Deck 18 of the *Royal Princess* in a reasonably safe condition. PRINCESS maintained the walking track adjacent to a golf driving/practice station in a manner that allowed golf balls to enter the walking surface used by passengers, creating a hazardous condition on the walkway..

49. **DUTIES OWED BY PRINCESS.** PRINCESS owed a duty to exercise reasonable care for the safety of its passengers, including Plaintiff. PRINCESS owed a duty as a common carrier to maintain the areas of its vessel, including passenger walkways, in a reasonably safe condition. PRINCESS's duties of care with respect to the subject area included: (a) inspecting the pedestrian walking/jogging track and adjacent recreational areas on a frequent and timely basis for conditions that could create a hazard to passengers using the walkway; (b) taking measures to remove or control hazards on the walking surface, including objects entering the walkway from adjacent areas; (c) securing, monitoring, or otherwise controlling recreational activities and equipment so that conditions created by those activities did not interfere with the safe use of adjacent passenger walkways; (d) providing sufficient crew to monitor, inspect, and maintain the safety of passenger areas, including exterior decks, walking tracks, and adjacent recreational spaces; including the walking/jogging track on Deck 18 of the *Royal Princess*, where Plaintiff was caused to fall.

50. **NOTICE.** As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in many ways.

51. **<u>PRINCESS BREACHED ITS DUTY</u>.** PRINCESS breached its duty to maintain the walking/jogging track on Deck 18 of the *Royal Princess* in a reasonably safe condition on June 13, 2025, where Plaintiff slipped and fell. PRINCESS breached its duties by failing to: (a) inspect the pedestrian walking/jogging track and adjacent recreational areas on a frequent and timely basis for conditions that could create a hazard to passengers using the walkway; (b) remove or otherwise control hazards on the walking surface, including golf balls entering the walkway from the adjacent golf driving/practice area; (c) secure, supervise, or otherwise control conditions created by the adjacent golf practice area so that such conditions did not interfere with the safe use of the walking track; (d) provide a sufficient number of personnel to patrol, inspect, and maintain the safety of the walking track and adjacent recreational areas; including the walking/jogging track on Deck 18 of the *Royal Princess*, where Plaintiff was caused to lose footing and fall.

52. **<u>PROXIMATE CAUSE</u>.** PRINCESS's failure to inspect and maintain the walking/jogging track and adjacent recreational areas in a reasonably safe condition proximately caused Plaintiff's injuries. PRINCESS's negligent inspection and maintenance allowed a golf ball to be present on the walking track and to enter Plaintiff's path of travel. Had PRINCESS properly inspected, maintained, and controlled the condition of the walking track and adjacent golf practice area, the golf ball would not have been present on the walking surface used by Plaintiff. As a result, Plaintiff would not have stepped onto the golf ball, lost footing, and fallen and been injured on June 13, 2025.

53. **<u>DAMAGES</u>.** As a result of PRINCESS's negligent maintenance, Plaintiff has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against PRINCESS for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in

the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT II**
**NEGLIGENT FAILURE TO WARN**
**(Direct Liability for Negligence Under General Maritime Law)**

54. The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 46 above.

55. This is an action against PRINCESS for its negligent failure to warn passengers, including Plaintiff, of its hazards, risks or dangers onboard the *Royal Princess*.

56. **DUTIES OWED BY PRINCESS.** PRINCESS owes duties to exercising reasonable care under the circumstances for the safety of its passengers. The Defendant owes a duty to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit. PRINCESS owes a duty of reasonable care under the circumstances. PRINCESS's duty of care includes warning of dangerous conditions on board the *Royal Princess*, including the walking/jogging track on Deck 18 where the Plaintiff slipped and fell on June 13, 2025. PRINCESS's duties of care include warning passengers who come into the area of the dangerous condition, including the presence of golf balls on the walking surface originating from the adjacent golf driving/practice area by: (a) posting warning signs; (b) placing physical barriers; (c) stationing personnel at the site of the condition; and other means; to warn passengers of dangerous conditions onboard the *Royal Princess*, including the dangerous condition of golf balls entering the walking/jogging track where Plaintiff slipped and fell on June 13, 2025.

57. **NOTICE.** As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in many ways.

58. **PRINCESS BREACHED ITS DUTY.** PRINCESS breached its duty to warn the Plaintiff of the dangerous conditions on board the *Royal Princess*, including where Plaintiff slipped and fell on June 13, 2025. PRINCESS breached its duties to the Plaintiff by its actions and conduct. PRINCESS failed to warn passengers who come into the area of the dangerous condition, including the presence of golf balls on the walking surface originating from the adjacent golf driving/practice area by failing to: (a) post warning signs, provide written notices and/or other visual cues; (b) place physical barriers; (c) station personnel at the site of the condition, and other means; and failed to warn passengers of dangerous conditions onboard the *Royal Princess*, including the dangerous condition created by golf balls entering the walking/jogging track where Plaintiff slipped and fell on June 13, 2025.

59. **PROXIMATE CAUSE.** PRINCESS's failure to reasonably warn the Plaintiff of the dangerous conditions on board the *Royal Princess*, including the walking/jogging track on Deck 18 where Plaintiff slipped and fell on June 13, 2025, proximately caused the Plaintiff's injuries. Had PRINCESS reasonably warned Plaintiff of the dangerous condition, including that golf balls could enter the walking path from the adjacent golf driving/practice area, Plaintiff would have known about the condition and would not have walked into the path of that hazard. Plaintiff therefore would not have stepped onto the golf ball, lost footing, and been injured on board the *Royal Princess* on June 13, 2025.

60. **DAMAGES.** As a result of PRINCESS's negligent failure to warn, Plaintiff has and will suffer damage in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against PRINCESS for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages.

Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT III
## NEGLIGENT TRAINING OF PERSONNEL
### (Direct Liability for Negligence Under General Maritime Law)

61. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 46 above.

62. This is an action against PRINCESS for negligent training of shipboard crew members.

63. **DUTIES OWED BY PRINCESS.** PRINCESS owes a duty to exercise reasonable care for the safety of its passengers. PRINCESS owes a duty of reasonable care under the circumstances. PRINCESS owes a duty to train its crew members to properly inspect, monitor, control and warn of dangers known to PRINCESS where PRINCESS invites or reasonably expects passengers to go. PRINCESS's duty of care includes training its crew members to inspect, monitor, control and warn passengers about dangerous conditions on board the *Royal Princess*, including the specific area where Plaintiff slipped and fell on June 13, 2025.

64. At all times material hereto, PRINCESS operated, controlled and/or maintained the walking/jogging track on Deck 18 as well as the adjacent recreational and sports areas. PRINCESS was responsible for, among other things and without limitation, overseeing operations on the exterior deck areas, including the golf driving/practice station and the adjacent walking track. This operational

responsibility included, but was not limited to, training crew how to inspect, monitor, control conditions on the deck, warn guests of hazards, and prevent incidents involving unsafe conditions on passenger walkways.

65. PRINCESS created training programs addressing the inspection and monitoring of passenger areas, the identification and control of hazards, and the provision of warnings to guests regarding dangerous conditions on board its ships. These trainings include programs applicable to the inspection, monitoring, supervision of recreational areas, and the provision of warnings to guests regarding hazards affecting adjacent passenger walkways. These programs are more thoroughly alleged and incorporated herein in **paragraph 44**.

66. PRINCESS should have become aware and could have easily discovered that it had failed to properly train its crew members given that crew members failed to inspect and monitor the subject area, failed to identify and control the presence of golf balls on the walking track, and/or failed to provide Plaintiff warnings about the dangerous condition and/or otherwise failed to implement or operate PRINCESS's training programs designed to identify hazards, control unsafe conditions, and maintain passenger walkways in a reasonably safe condition.

67. **NOTICE.** As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in many ways.

68. **PRINCESS BREACHED ITS DUTIES.** PRINCESS breached its duty of care owed to Plaintiff and was negligent by failing to reasonably train its crew members to inspect, monitor, control, and warn passengers of dangerous conditions and/or implement or operate its training procedures to prevent unsafe conditions on board the *Royal Princess*, including the subject area where Plaintiff slipped and fell on June 13, 2025. PRINCESS failed to reasonably implement or operate its training programs including, but not limited to, the following ways:

a. failing to teach shipboard crew how to inspect and identify hazards on passenger walkways, including the presence of objects on the walking surface;

b. failing to teach shipboard crew how frequently to inspect walking tracks and adjacent recreational areas for hazards;

c. failing to teach shipboard crew how to monitor and supervise recreational areas, including golf driving/practice stations, to prevent objects from leaving those areas;

d. failing to teach shipboard crew where hazards may arise from the interaction between recreational activities and adjacent passenger walkways;

e. failing to teach shipboard crew to control conditions created by recreational activities that may affect the safety of nearby walking surfaces;

f. failing to teach shipboard crew how to prevent objects, including golf balls, from entering passenger walkways;

g. failing to teach shipboard crew how to remove or otherwise control hazards present on walking surfaces;

h. failing to teach shipboard crew how frequently to monitor and patrol areas where recreational activities occur adjacent to walking paths;

i. failing to teach shipboard crew to ensure that walking surfaces are safe before permitting or allowing continued passenger use;

j. failing to teach shipboard crew how to warn guests about hazards created by adjacent recreational activities;

k. failing to teach shipboard crew how to properly mark, monitor, and/or provide visual or other cues to alert guests to hazards affecting a walking track;

l. failing to teach shipboard crew how to maintain walking surfaces in a reasonably safe condition where objects may enter the path of travel;

m. failing to teach shipboard crew how to test, check, and/or otherwise determine whether crew understand how to inspect and maintain walking areas free of hazards;

n. failing to teach shipboard crew how to test, check, and/or otherwise determine whether crew understand how to warn guests to prevent incidents involving unsafe walking conditions;

o. failing to teach shipboard crew how to test, check, and/or otherwise determine whether crew members understand PRINCESS's safety and hazard prevention programs;

p. failing to teach shipboard crew how frequently crew should be trained to ensure they understand, remember, and retain information regarding inspection, monitoring, control of hazards, and warning passengers;

q. failing to teach shipboard crew to comply with industry standards regarding how to train its crew members to inspect, monitor, and maintain passenger walkways in a safe condition;

r. failing to teach shipboard crew to assign sufficient personnel to implement and operate its inspection, monitoring, and hazard control programs.

In doing so, PRINCESS failed to reasonably implement or operate its training programs described in **paragraph 44** and incorporated herein.

69. At the time Plaintiff fell on the walking/jogging track on Deck 18, the crew responsible for inspecting, monitoring, supervising, and warning in that area failed to do so. Because those crewmembers were not properly trained, PRINCESS failed to reasonably warn

passengers like the Plaintiff of the dangerous conditions on board the *Royal Princess*, including the presence of golf balls on the walking surface in the area where Plaintiff slipped and fell on June 13, 2025.

70. Because those crew were not reasonably trained, those crew members also failed to properly inspect and monitor the subject area, failed to identify and control the presence of golf balls on the walking track, and/or otherwise failed to maintain the area in a reasonably safe condition.

71. **PROXIMATE CAUSE.** PRINCESS's failure to reasonably train its crew to implement or operate its training procedures proximately caused Plaintiff's injuries. Had PRINCESS reasonably implemented or operated its training programs onboard its ships, including the *Royal Princess* on June 13, 2025, the crew members would have inspected, monitored, and controlled the subject area and identified the presence of golf balls entering the walking/jogging track from the adjacent golf driving/practice area and would have warned Plaintiff about the dangerous condition. If PRINCESS had reasonably implemented or operated its training programs, the dangerous condition would not have existed on the walking surface. If PRINCESS reasonably trained its crew members, Plaintiff would have known about the dangerous condition. Plaintiff therefore would not have stepped onto the golf ball, lost footing, and fallen on the subject incident area on June 13, 2025.

72. **DAMAGES.** As a result of PRINCESS's negligent training the Plaintiff has and will suffer damage in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against PRINCESS for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future.

The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT VI**
**NEGLIGENT DESIGN, CONSTRUCTION**
**AND SELECTION OF MATERIALS**
**(Direct Liability for Negligence Under General Maritime Law)**

73. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 46 above.

74. This is an action against PRINCESS for its negligent design, construction and selection of the subject area.

75. **DUTIES OWED BY PRINCESS.** PRINCESS owes duties to exercise reasonable care under the circumstances for its passengers. PRINCESS's duties of care include: (a) selecting materials, which include selecting containment systems, netting, barriers, and other components suitable and safe for recreational activities involving projectiles and their proximity to high-volume pedestrian walkways, particularly where passengers are expected to walk in close proximity to such activities; (b) designing and constructing all areas onboard its ships, including the relationship between recreational areas and pedestrian walkways, to meet applicable industry standards and to be reasonably safe for their intended use or foreseeable use by its passengers; (c) approving the selection, design and/or construction of its ships, including the placement and containment of recreational areas adjacent to passenger walkways, only when such industry standards are met in the context of the area's intended or foreseeable use.

76. The circumstances are that PRINCESS owns and operates approximately 17 cruise ships, which include the *Royal Princess*. The *Royal Princess* is part of the Royal Class, which includes the *Royal Princess*, *Regal Princess*, *Majestic Princess*, *Sky Princess*, *Enchanted Princess*, and *Discovery Princess*. The Royal Class, as well as all other ships in PRINCESS's fleet, were designed and custom built on the specifications or at the direction of PRINCESS's shoreside New Build Department and other shoreside departments. PRINCESS employs architects, designers, and engineers. The ship was built in Italy at a shipyard under the constant supervision of PRINCESS's onsite construction managers, designers, architects, and engineers.

77. During construction of the ship, under the contract with the shipyard, PRINCESS has full access to the ship to inspect and to reject any aspect of the design or construction of the ship. PRINCESS maintains ultimate control under their contract with the shipyard if any aspect of design or construction is unsafe, in violation of International safety codes, or not reasonable under the circumstances. PRINCESS has ultimate control because it participates in the design and because they are onsite during construction. PRINCESS also has ultimate control over design and construction because if their request for a certain design or construction is not carried out correctly or if their request for changes is not carried out PRINCESS can withhold payment. All of PRINCESS ships, including the *Royal* class from bow to stern and across all decks have express approval from PRINCESS before entering navigable waters.

78. The planning and design of the *Royal Princess* began prior to its construction and the vessel was ultimately completed and entered service in August 2012. PRINCESS has operated and maintained the ship continuously since that time. The *Royal Princess* has a capacity of approximately 3,600 passengers.

79. Like all PRINCESS ships, the *Royal Princess* operations involve attracting passengers to exterior deck areas and recreational spaces and controlling and ensuring the safety

of those passengers in those areas. PRINCESS attracts passengers to its upper deck recreational areas, including walking/jogging tracks and adjacent sports and golf practice areas, because PRINCESS offers these amenities for passenger use.

80. Passengers continuously use these walking tracks for exercise and travel while other passengers simultaneously use adjacent recreational facilities, including golf driving/practice stations. During these activities, golf balls are struck, rebound off netting or surfaces, and may leave the intended hitting area and travel onto adjacent walking surfaces. These conditions occur repeatedly and continuously during passenger use of these areas.

81. As a result of the design and operation of these adjacent uses, golf balls can drop, bounce, and roll onto the walking/jogging track where passengers are expected to walk. Without adequate containment or separation, the interaction between these activities creates a condition on the walking surface in which objects may enter the path of travel and interfere with passenger footing.

82. As anticipated and intended by PRINCESS, passengers constantly and repeatedly use the walking/jogging track on Deck 18 of the *Royal Princess* throughout the day and night. Passengers simultaneously use adjacent recreational areas, including the golf driving/practice station. For this reason, PRINCESS knew or should have known that the design, placement, and selection of materials and containment systems for this heavily trafficked area needed to be appropriate and safe for installation in locations where passengers are expected to walk in close proximity to recreational activities involving projectiles.

83. PRINCESS knows that hazards on walking surfaces, including small objects such as golf balls, may not be readily observable to passengers using a designated pedestrian path. PRINCESS knows that passengers walking forward on a track may not be able to see or appreciate the presence of a golf ball entering the walking surface from behind or from an adjacent area, or

understand the extent to which such an object can interfere with footing and create a dangerous condition. Because of the known risk presented by non-obvious hazards on walking surfaces, PRINCESS utilizes warnings in passenger areas to alert passengers to such conditions. Therefore, PRINCESS knew or should have known that its passengers may not recognize the danger presented by golf balls entering the walking/jogging track.

84. Despite the fact that PRINCESS was aware of these circumstances based on its years of maritime experience and knowledge of the risks associated with placing recreational activities adjacent to passenger walkways, PRINCESS continued to allow passengers to use the walking track in close proximity to a partially enclosed golf driving/practice station that permitted golf balls to enter the walking path. PRINCESS knew of the hidden dangers presented by golf balls entering the walking track, yet PRINCESS or its employees did little or nothing to address these dangers.

85. **NOTICE.** As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in many ways.

86. PRINCESS knew or should have known that the subject area, including the layout, configuration, and containment systems it selected and installed on Deck 18 of the *Royal Princess*, was unreasonably dangerous because it permitted golf balls to leave the adjacent golf driving/practice station and enter the pedestrian walking/jogging track.

87. PRINCESS knew or should have known of the dangerousness of the subject area, including the placement and partial containment of the golf driving/practice station adjacent to the walking track, since the time of its design, installation, and approval.

88. **PRINCESS BREACHED ITS DUTIES.** PRINCESS breached its duties of care owed to Plaintiff and was negligent by selecting, designing and/or constructing, approving, the materials and configuration installed onboard the *Royal Princess*, including the subject area where

Plaintiff slipped and fell on June 13, 2025. PRINCESS breached its duties to the Plaintiff by its actions and conduct. PRINCESS failed to reasonably design and/or construct, select, approve the materials and configuration onboard the *Royal Princess* by failing to: (a) select materials, which include selecting containment systems, netting, barriers, and configurations suitable and safe for a high volume of pedestrian traffic in areas where passengers are expected to walk in close proximity to recreational activities involving projectiles; (b) design and construct all areas onboard its ships, including the placement and relationship between recreational activities and pedestrian walkways, to meet applicable industry standards and to be reasonably safe for their intended use or foreseeable use by its passengers; (c) approve the selection, design and/or construction of its ships, including the containment and placement of recreational areas adjacent to walking paths, only when such industry standards are met in the context of the area's intended or foreseeable use. PRINCESS failed to select, design and/or construct and approve materials and configurations which complied with industry standards. The design, materials, and configuration PRINCESS chose, selected, approved of, and installed for the subject area on board the *Royal Princess* was unreasonably dangerous.

89. **PROXIMATE CAUSE.** PRINCESS's negligent design, construction, and selection of materials and configuration for the subject area on board the *Royal Princess* proximately caused Plaintiff's injuries. Had PRINCESS reasonably designed, constructed, and selected the materials and configuration installed in the subject area onboard the *Royal Princess*, including properly containing the golf driving/practice station and separating it from the adjacent walking/jogging track, Plaintiff would not have stepped onto a golf ball, lost footing, and been injured on June 13, 2025.

90. **DAMAGES.** PRINCESS's negligent design, construction, and selection of materials the Plaintiff has and will suffer damage in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against PRINCESS for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, and lost wages and other compensation in the past, loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands trial by jury of all claims so triable.

By: *s/ Sarah A. Lobel*
**JOHN H. HICKEY, ESQ. (**FBN: 305081)
hickey@hickeylawfirm.com
**SARAH A. LOBEL, ESQ.** (FBN 88716)
slobel@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
Douglas Entrance Office Parc
Executive Tower
804 South Douglas Road
Suite 373
Coral Gables, FL 33134
*Attorney for the Plaintiff*